UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

HOTELS OF DEERFIELD, LLC, an Indiana limited liability company, and MHG HOTELS, LLC, an Indiana limited liability company,

   Plaintiffs,

v.

STUDIO 78, LLC, a Georgia limited liability company, SHAILESH KALYAN, an individual, PALMER ENGINEERING COMPANY, a Georgia company, BAKULESH M. PATEL, P.E., an individual, PROMUS, INC., a Tennessee Limited liability company, DARIN FRICK, P.E., an individual,

   Defendants.
_____/

Case No.: 0:21-cv-60980-RNS

**PLAINTIFFS MHG HOTELS, LLC AND HOTELS OF DEERFIELD, LLC MOTION IN LIMINE TO EXCLUDE EXPERT LEGAL INTERPRETATION OF REGULATIONS AND STATUTES**

Plaintiffs, MHG HOTELS, LLC ("MHG") and HOTELS OF DEERFIELD, LLC ("Deerfield")(collectively referred to herein as "Plaintiffs") by and through undersigned counsel, Peckar & Abramson, P.C., and pursuant to the Federal Rules of Civil Procedure, hereby files their Motion in *Limine* to exclude any and all evidence, references to evidence, testimony, and/or argument relating to Studio 78, LLC and Shailesh Kalyan's architectural expert's legal conclusions and interpretations as to regulations and statutes inapplicable to the instant case, namely, Chapter 481, Fla. Stat. and Rule 61G1-18.002, *Fla. Admin. Code*, and states in support:

1

I.      **Preliminary Statement and Background**

This case arose from the design of a hotel owned and operated by Plaintiffs: a Fairfield Inn & Suites located at 50 Fairway Drive, Deerfield Beach, Florida 33441 (the "Project").

In April 25, 2017, Plaintiffs retained STUDIO 78, LLC, and SHAILESH KALYAN (together referred to herein as "Studio 78 Defendants"), its principal, to furnish architectural and engineering designs ("Design Documents") for the Project sufficient for Plaintiffs' to obtain a building permit to begin construction. Subsequently, and to that end, Studio 78 Defendants retained PALMER ENGINEERING COMPANY and BAKULESH M. PATEL, P.E. (together referred to herein as "Palmer Defendants") and PROMUS, INC. ("Promus") to provide sub-consulting design and engineering services.

In September, 2017, Studio 78 Defendants furnished Design Documents for the Project to Plaintiffs with the representation that those Design Documents were complete, adequate, and sufficient for Plaintiffs' to obtain a building permit and begin construction. However, Plaintiffs learned the Design Documents were woefully inadequate and insufficient for building permit issuance and were required to retain a new design team to start the design process over from scratch. It was not until October, 2018, that Plaintiffs were issued a permit with their new set of design plans. In the interim, Plaintiffs incurred substantial damages due to the delay caused by Defendants' preparation and submission of incomplete and deficient plans. Subsequently, Plaintiffs brought this action asserting claims of professional negligence against each Defendant for breaching their applicable duty of care to Plaintiffs.

In response to Plaintiffs' Complaint, asserted, among others, its Twenty-Ninth Affirmative Defense which provides: [Studio 78 Defendants] "apprise themselves" of Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* "to the extent there exists a successor architect that

signed and sealed original documents prepared by [Studio 78 Defendants], those documents must be treated as though they are the successor architect's original project and [Studio 78] would be released from all professional and legal responsibility or civil liability for any prior work. . ." *See* Studio 78 Answer and Affirmative Defenses to Second Amended Complaint, [D.E. 55]. Because Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* are only applicable in the context of licensing and disciplinary proceedings, Plaintiffs' filed a Motion for Summary Judgment on Defendants' Affirmative Defenses Concerning Subsequent Design Professionals ("Plaintiffs' MSJ") [D.E. 105], which is currently pending.

Further, based on the deposition testimony of Studio 78 Defendants' expert, Martin Diaz-Yabor, it appears that the Studio 78 Defendants intend to proffer expert testimony on ultimate issues of law and will attempt to instruct the jury to interpret Rule 61G1-18.002, Fla. Admin. Code, and Chapter 481, Fla. Stat. in an improper manner.

As the Court is aware, an expert witness may not give an opinion on ultimate issues of law. *See U.S. v. Delatorre,* 308 Fed.Appx 380, 383 (11th Cir. 2009)("We have held that an expert witness may not testify as to his opinion regarding ultimate legal conclusions. . . an expert witness may testify as to his opinion on an ultimate issue of fact, so long as the opinion is 'based on personal observations of the witness.")(citing *Montgomery v. Aetna Cas. & Sur. Co*., 898 F.2d 1537, 1541 (11th Cir.1990)); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)(citing *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); *Adalman v. Baker, Watts & Co*., 807 F.2d 359, 366 (4th Cir.1986); *United States v. Zipkin*, 729 F.2d 384 (6th Cir.1984)).

Additionally, as detailed in Plaintiff's Motion for Summary Judgment, neither Rule 61G1-18.002, Fla. Admin. Code, nor Chapter 481, Fla. Stat. could constitute Defendants' critical

evidence, as the dispute in this case does not concern Defendants' compliance with licensing and disciplinary statutes. Rather, the instant dispute resolves around whether Defendants furnished professional services in accordance with their applicable standard of care. There is no dispute that, at all times relevant hereto, Defendants were each licensed professionals in good standing.

Further, even assuming arguendo, that the Court declines to grant Plaintiffs' Motion for Summary Judgment, to the extent the Court is inclined to find Rule 61G1-18.002, Fla. Admin. Code, and Chapter 481, Fla. Stat. relevant to the matter at hand, the probative value of the expert's testimony concerning Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.*is substantially outweighed by the danger of confusing the issues, misleading the jury, and prejudicing Plaintiffs. As such, the Court must exclude any and all evidence, references to evidence, testimony, and/or argument relating to Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.*

## MEMORANDUM OF LAW

### II.     Legal Standard

The Court has the authority to grant a motion *in limine* to exclude evidence that is "clearly inadmissible on all potential grounds." *Centre Hill Courts Condominium Association, Inc. v. Rockhill Insurance Company*, 2020 WL 496065 *1 (S.D. Fla. January 30, 2020)(*Not Reported in Fed. Supp.*)(citing *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010)). The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Id*. Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. *Id*. at *2.

"Although experts may disagree in their conclusions, **their testimony cannot be used to provide legal meaning**. . ." *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir.

1999)(*citing Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996)(stating that expert testimony is not proper for issues of law because the role of experts is to interpret and analyze factual evidence and not to testify about the law)). Opinions phrased in terms of inadequately explored legal criteria should be excluded as not helpful and possible misleading. *United States v. Scop*, 846 F.2d 135, 140 (2d Cir.1988) (***quoting* the Advisory Committee's Note to Rule 704**)("**The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury**"). While an expert 'may opine on an issue of fact within the jury's province,' an expert 'may not give testimony stating ultimate legal conclusions based on those facts. *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D. N.Y. 2005).

Even if evidence is relevant, the Court may exclude the evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence. *Id*.; see also Fed. R. Evid. 403. To that end, "[i]n applying Rule 403, courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact. *Milbrath v. NCL Bahamas, Ltd.,* 2018 WL 2021339 *2 (S.D. Fla. February 28, 2018)(*Not Reported in Fed. Supp*.). "Rule 403's major function is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Aycock v. R.J. Reynolds Tobacco, Co.,* 769 F.3d 1063, 1069 (11th Cir. 2014). **Evidence merely intended to bolster a party's case is more easily excluded under Rule 403 than testimony that forms a critical part of that case.** (emphasis added). *Id*.

   III.   **Studio 78 Defendants' Expert Witness Testimony Concerning Rule 61G1-18.002, *Fla. Admin. Code and* Chapter 781, Fla. Stat. Impermissibly States Legal Conclusions, is irrelevant to the instant case and will only serve to unfairly prejudice Plaintiffs, mislead the jury, and confuse the issues.**

5

Notwithstanding the fact that Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* are legally inapplicable to the instant matter because both are only applicable in the context of licensing and disciplinary proceedings,[1] the Court must exclude Studio 78's architectural expert from testifying relating to the legal meaning of Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* because it would be improper for the Court to permit them to opine on conclusions of law. See *Delatorre, supra*.

Although, Rule 704 of the Federal Rules of Evidence dictates that "an opinion is not objectionable just because it embraces an ultimate issue" the notes in the advisory committee emphasize that Rule 704 distinguishes between pure legal conclusions and opinions on fact which may convey an opinion on an ultimate issue:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. **These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach**, somewhat in the manner of the oath-helpers of an earlier day. **They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria**. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick §12.

In this case, the deposition testimony of Studio 78 Defendants' expert, Martin Diaz-Yabor, is riddled with pure conclusions of law arising from Mr. Diaz-Yabor's interpretation of Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat*. For example:

    A.    ". . . Now, I don't know if I should continue to give you my opinion on it, but you tell me.

    Q.    "Yeah, please do."

---

[1] See *Villanueva v. Reynolds, Smith and Hills, Inc.*, 159 So. 3d 200, n.2 (Fla. 5th DCA 2015) and arguments concerning same in Plaintiffs' MSJ [D.E. 105].

> A. Okay. So if you have an architect that's precluded from providing -- from continuing to provide services early stage on the game, he doesn't get -- he gets released from the project, doesn't get paid. **Then another architect that, arm's length, came and takes over the project, okay, and moves forward with that project from that point on, now you've got to go to the administrative codes.** The administrative codes are clear. This is a very simple case. Mr. Anderson is trying to push the blame of defects off on Studio 78, LLC. **But what Mr. Anderson doesn't understand is that, under the administrative code and the statutes**, the person responsible to provide a complete set of documents without errors or minimum amount of errors, which nobody's perfect and it's understandable that people do commit errors and omissions in a set of documents, it's too many moveable parts. What he doesn't understand is that the minute that he, **first, never put in notice to Studio 78, tell them that he was taking over the project. Second, he took the project under his umbrella, became the AOR, which means architect of record,** bought the lock, stock, and barrel. **Regardless if Mr. -- you know, Studio 78, LLC committed a gross error** in the plans or not because, guess what<u>**, the administrative code is extremely clear, and it states if you take over a set of documents, you are fully responsible for before and after, whatever happens with those documents.**</u> And, I mean, I don't see anything other than that in this case. And, I mean, in my opinion, I guarantee any architect will tell you the same thing. **If you look at the administrative code,** and don't take my word for it, under 61G1 Section 18.002, Procedures for Successor Architect Adopting as His Own the Work of Another Architect, it'll tell you right there….

*See* Deposition Testimony of Martin Diaz-Yabor attached hereto as **Exhibit A** ("Dep. Diaz-Yabor") at 57:11-59:2 (emphasis added).

> A. . . . Did Studio 78 went through the process of permitting? No. Did Studio 78 sign and seal the documents under their signature and seal and submit it to the building department and got commentary? No**.** <u>**Even if they did, even if they did, they have absolutely no responsibility, absolutely zero, under the administrative code if Mr. Anderson took over the plans as the architect of record.**</u> It is his responsibility to check everything before and after. So, I mean, I'm sorry, it's just -- black and white.

7

*See* Dep. Diaz-Yabor at 59:14-25 (emphasis added).

Mr. Diaz-Yabor's only opinion is that his legal interpretation of Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* amounts to Plaintiff's retention of a subsequent architect extinguishes liability from the prior architect. However, this opinion is not based on facts or interpretation of the architectural plans of the prior or subsequent architect. As such, Mr. Diaz-Yabor seeks to improperly represent himself *as an expert on the law*, as opposed to assisting the fact finder on understanding facts or data. *See* Rule 702 of the Federal Rules of Evidence ("the testimony is based on sufficient facts or data").

Mr. Diaz-Yabor even read the *entire* Rule 61G1-18.002, *Fla. Admin. Code*, into the record. *See* Dep. Diaz-Yabor at 60:3-61:14. After reading the Rule, Mr. Diaz-Yabor acknowledged that Plaintiffs' architect, Anderson Architecture ("Anderson"), never notified Studio 78 Defendants that Anderson intended to reuse Studio 78 Defendants' plans as its own work. *In fact, Mr. Diaz-Yabor was unsure whether he had even actually reviewed Anderson's plans in the first place*:

> Q. But you didn't review Anderson's plans; correct?
>
> A. **No, I did not. I don't believe so. <u>But it's irrelevant</u>**, Ryan – pardon me for interrupting you – because remember, if I take responsibility over your job as an attorney and I completely flounder the case, it's my responsibility, not yours. You had the case before, but I took over. Right? Same thing here. **And the statutes in the administrative code has been always clear. That's why, when you take over the work of another architect or professional, you have to be very, very, very careful because the liability becomes yours the instant that you take over. And even if Mr. LLC and Studio 78, at that point in time, committed gross negligence** but it didn't go forward, and this gentleman takes over and signs and seals over those documents, he cannot push the blame to the other person. And that's when you read through this entire case.

*See* Dep. Diaz-Yabor at 61:21-62:16 (emphasis added).

8

Nonetheless, Mr. Diaz-Yabor opined it would not matter whether Anderson reused Studio 78 Defendants' plans because the moment Anderson became the Architect of Record of the Project, Anderson took responsibility for everything on the Project, both before and after his retention by Plaintiffs.

> Q. So your opinions are not based on the assumption that Anderson used Studio 78's plans?
>
> A. **No, it's irrelevant to any of that because the administrative code is clear.** It's very clear. Mr. Anderson took responsibility over the project. From that point on, anything that happened before and after is Mr. Anderson's, so he cannot deflect. I'm sorry, but -- you know, it's sad, but it is the way it is.

*See* Dep. Diaz-Yabor at 63:14-20.

> A. **Again, we are circumventing or trying to go around what the administrative code is saying.** You can't deflect blame on Studio 78 for any reason whatsoever. **Studio 78 has zero culpability moving forward from the time that the AOR became Anderson.** And that's basically, okay, the nut -- the lock, stock, and barrel of this case. There's no way around it.

*See* Dep. Diaz-Yabor at 73:18-25 (emphasis added)

To that end, Mr. Diaz-Yabor opines and interpretates Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.* in his testimony to support the proposition that once Mr. Anderson became the Architect of Record, the Studio 78 Defendants were **legally immune** from any liability arising from the professional services it furnished to Plaintiffs. This is not an opinion derived from facts, data or architectural expertise, but from a purely legal interpretation. This is improper as it does not provide a jury with the tools to come up with its own legal conclusions but directs the jury to a single legal conclusion based on this individual's legal reading. As such, the Court must exclude Mr. Diaz-Yabor from testifying regarding Rule 61G1-18.002, *Fla. Admin.*

*Code,* and Chapter 481, *Fla. Stat.* because it is improper for an expert to opine on ultimate issues of law.

Therefore, even if the Court was inclined to adopt an interpretation of Rule 61G1 broadening its scope to apply in the civil context, any alleged probative value of the Rule would be substantially outweighed by the danger of prejudice to Plaintiffs, confusing the issues, and misleading the jury.

## **CONCLUSION**

It is overwhelmingly clear that Studio 78 Defendants intend to introduce expert witness testimony opining on ultimate issues of law not derived from facts or data. The Court must exclude Mr. Diaz-Yabor from testifying as to his legal interpretation relating to Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.*, because questions which are matters of law are for the Court to decide. Further, Mr. Diaz-Yabor's testimony reflects his misunderstanding of the Florida Administrative Code and its applicable scope, dangerously confusing the issue of licensing standards and the legal standard of care for a design professional. Permitting Studio 78 Defendants to introduce such testimony will unquestionably mislead the jury and prejudice Plaintiffs' from receiving a fair trial.

For the reasons stated above, Plaintiffs respectfully request the Court enter an Order excluding Mr. Diaz-Yabor from testifying as to his legal interpretation relating to Rule 61G1-18.002, *Fla. Admin. Code,* and Chapter 481, *Fla. Stat.*

WHEREFORE, Plaintiffs, MHG HOTELS, LLC and HOTELS OF DEERFIELD, LLC, respectfully request the Court enter an Order granting their Motion in *Limine* to exclude any and all evidence, references to evidence, testimony, and/or argument relating to Rule 61G1-18.002,

*Fla. Admin. Code*, and Chapter 481, *Fla. Stat.*, and such other and further relief as the Court deems just, reasonable, and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Counsel for Plaintiffs conferred with counsel for Studio 78, LLC and Shailesh Kalyan via email on June 20, 2022 and was advised that they *did* object to the relief sought herein.

Respectfully submitted this June 20, 2022.

/s/Anne-Solenne Rolland
Anne-Solenne Rolland
Florida Bar No. 99631
arolland@pecklaw.com
Adam P. Handfinger
Florida Bar No.: 636142
ahandfinger@pecklaw.com
Freddy X. Muñoz
Florida Bar No.: 108242
fmunoz@pecklaw.com
PECKAR & ABRAMSON, P.C.
One Southeast Third Avenue, Suite 2000
Miami, Florida 33131
Telephone: 305.358.2600