UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60980-CIV-SINGHAL/VALLE

HOTELS OF DEERFIELD, LLC, an
Indiana limited liability company, and
MHG HOTELS, LLC, an Indiana limited
liability company,

       Plaintiffs,

v.

STUDIO 78, LLC, a Georgia limited
liability company, SHAILESH
KALYAN, an individual, PALMER
ENGINEERING COMPANY, a Georgia
company, BAKULESH M. PATEL,
P.E., an individual, PROMUS, INC., a
Georgia corporation, DARIN FRICK,
PE., an individual,

       Defendants.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court upon Defendant Studio 78, LLC and Shailesh

Kalyan's ("Defendants") (I) Motion to Strike Plaintiff, Hotels of Deerfield, LLC's Expert

Witness Disclosure, and (II) *Daubert* Motion to Exclude Expert Opinion, filed on May 18,

2022 (the "Motion") (DE [100]). Plaintiff Hotels of Deerfield, LLC ("Plaintiff") filed a

Response on June 1, 2022 (DE [112]). Defendants filed a Reply on June 7, 2022 (DE

[124]). The Motion is now ripe for this Court's consideration.

## I.  BACKGROUND

Plaintiff Hotels of Deerfield, LLC alleges two counts of professional negligence

against Studio 78, LLC and Shailesh Kalyan. *See* Second Am. Compl (DE [52]). The

parties were required to disclose experts and exchange expert witness summaries or

reports by January 27, 2022 (DE [25]). Defendants state they retained an architectural

expert for this litigation, Martin Diaz-Yabor, who prepared an expert report that was served contemporaneously with his expert witness disclosure on January 27, 2022. *See* Motion, at 2. Plaintiff served its expert disclosure on January 27, 2022 (DE [100-1]). This disclosure designates Eric Anderson, the replacement architect for the Project ("Anderson"), as a "hybrid fact-expert witness." *Id.* The disclosure indicates Anderson was not retained to provide expert testimony in this case and is subject to Fed. R. Civ. P. 26(a)(2)(C). *Id.* at 1. The disclosure states Anderson is a licensed architect in Florida with over 35 years of experience and substantial experience in preparation of plans and specifications for projects. *Id.* at 2. The disclosure asserts that Anderson will testify how the plans prepared by Defendants were incomplete, unbuildable as drawn, improper for their intended use, noncompliant with the Florida Building Code, and ultimately unsalvageable. *Id.* The disclosure adds that Anderson will testify as to the standard degree of care and skill ordinarily exercised by architects in south Florida and whether Defendants' work and plans met that standard. *Id.* The disclosure includes Anderson's resumé and retention contract. *Id.* In Anderson's signed affidavit attached to the disclosure, he describes specific reasons why Defendants' plans violate the Florida Building Code. *Id.* at 6. The disclosure also includes a memorandum prepared by Anderson that further elaborates his review and findings. *Id.* at 10–13. This memorandum provides a detailed summary of the items analyzed and opinions reached during Anderson's initial review of Defendants' plans. *Id.*

Defendants contend that Plaintiffs' expert disclosure is inadequate under Fed. R. Civ. P. 26(a)(2)(A)-(B) because the disclosure fails to provide a formal expert summary or report and provides no basis for the expert opinion. *See* Motion, at 5–9. According to Defendants, it is evident from Anderson's deposition that he is not an expert witness

because he testified that he was neither retained as an expert witness nor hired to render expert opinion on whether Defendants' design fell below the architectural standard of care. *Id.* Moreover, Defendants submit, Anderson testified that he had not drafted an expert report for this litigation. *Id.* Defendants add that the memorandum was prepared in October 2018 by Anderson just before he was retained as a replacement architect. *Id.* Thus, according to Defendants, this memorandum cannot function as an expert report. Defendants conclude that, because Anderson has not provided a formal expert report and has testified that he is not rendering expert opinion, his disclosure should be stricken and he should not be allowed to provide expert testimony. *Id.* at 9–12.

Second, in the alternative, Defendants contend that Anderson should be stricken under *Daubert* and FRE 702. *Id.* at 13 –16. Defendants assert that any opinions held by Anderson were held at a snapshot in time in October 2018 upon being hired to perform a peer review of Defendants' design and replace Defendants. *Id.* at 16. Thus, according to Defendants, the Court has no way of knowing the method or analysis conducted by Anderson because his disclosure contains mere conclusory statements. *Id.* Moreover, Defendants add, Anderson even testified in his deposition that he was not aware of the precise design phase at the time of his review. *Id.*

Plaintiff responds that Anderson was properly disclosed as an expert under Fed. R. Civ. P. 26(a)(2)(C). *See* Response, at 4. Thus, according to Plaintiff, Anderson's testimony that he was not retained as an expert in this matter is consistent with his classification as a hybrid fact and expert witness under Rule 26(a)(2)(C) because he was retained to review work of design professionals and serve as a replacement professional, not to provide expert testimony at trial. *Id.* Plaintiff asserts that Defendants cite no authority for the proposition that a witness's deposition testimony regarding their

understanding of their role in the litigation impairs the validity of their designation as an expert witness. *Id.*

Second, Plaintiff argues the sufficiency of the report served along with Plaintiff's expert disclosure is irrelevant to whether Anderson was properly disclosed. *Id.* at 5–7. According to Plaintiff, hybrid witnesses are only required to disclose a summary of facts and opinions to which the witness is expected to testify under Rule 26(a)(2)(C). *Id.* Plaintiff asserts that its expert disclosure set forth detailed summaries of the facts and opinions to which Anderson is expected to testify. *Id.*

Third, Plaintiff argues Anderson cannot be excluded under *Daubert* because it is likely inapplicable to Anderson. *Id.* at 8–14. Plaintiff submits that the testimony of a hybrid witness is not subject to *Daubert* unless the testimony goes beyond the witness's own observations and technical experience. And nevertheless, Plaintiff argues, Anderson would survive *Daubert* because he is qualified to testify regarding (i) deficiencies in Defendants' design plans, (ii) the degree of care and skill ordinarily exercised by architects in South Florida, (iii) whether Defendants fell below that standard, and (iv) all other topics for which he is designated. *Id.* at 9. Moreover, Plaintiff adds, Anderson's conclusions are based upon his review of all Defendants' files and application of his professional judgment formed by four decades of experience as an architect. *Id.* Thus, Plaintiff concludes, Anderson's opinions will assist the trier of fact because the professional standard of care in the field of architecture falls outside the common knowledge of lay persons. *Id.* at 13–14.

## II.  LEGAL STANDARD

### A.  Motion to Strike Expert Witness Disclosure

"Compliance with Rule 26's expert witness disclosure requirements is mandatory

and self-executing." *Warren v. Delvista Towers Condo. Ass'n, Inc.,* 2014 WL 3764126, at *1–2 (S.D. Fla. July 30, 2014) (citing *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 51 (1st Cir.2001)). "The purpose of the rule is to safeguard against surprise." *Id.* (citing *Thibeault v. Square D Co*., 960 F.2d 239, 244 (1st Cir.1992)).   Furthermore, the trial court's scheduling orders "control the course of the action unless the court modifies it." *United States v. Marder*, 318 F.R.D. 186, 189–90 (S.D. Fla. 2016) (citing Fed. R. Civ. P. 16(d)). "As scheduling orders set the expectations of the parties and the Court during the pretrial process, such orders 'should not be ignored blithely nor trifled with, without some peril or consequence.'" *Id.* (quoting *Hudson v. I.R.S.,* 2007 WL 2295048, at *10 (N.D.N.Y. Mar. 27, 2007)).   "Veritably, 'a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1.'"  *Id*. at 190 (quoting *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 2010 WL 4117050, at *1 (S.D. W. Va. Oct. 19, 2010) (internal citation and quotation omitted).

"A failure to comply with the expert witness disclosure requirements may result in the striking of expert reports or the preclusion of expert testimony."  *Warren,* 2014 WL 3764126, at *1–2 (citations omitted). "Under Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with [expert witness disclosure] unless the failure is substantially justified or is harmless." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008); Fed. R. Civ. P. 37(c)(1).

## B. *Daubert*

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  This gatekeeping function directs the

court to "admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The Court must "determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes, "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

The Court must apply a three-prong test to qualify an expert witness, identifying whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1291–92. "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Id.*

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *United States v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). Under Federal Rule of Evidence 403, relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." A court enjoys broad discretion in applying the Rule 403 balancing test. *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011). In *Daubert*, the Court described the gatekeeping function

6

of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but [also] reliable." *Daubert*, 509 U.S. 579 at 589.  While the Court must play this important gatekeeping function, "it is not the role of the trial court to make ultimate conclusions as to the persuasiveness of proffered evidence." *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).  Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### 1.   Qualifications

Under *Daubert*, a witness is qualified as an expert if he or she possesses specialized knowledge, skill, experience, training, or education. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see also* FED. R. EVID. 702.  An "expert[] may be qualified in various ways." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  Therefore, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260–61. The proffered expert must not only meet the basic qualification requirements, but also be qualified specifically in the area on which he or she proposes to testify—on topics that are "sufficiently within his expertise." *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). Finally, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Fitzgibbon v. Winnebago Indus., Inc.*, 2020 WL 1172495, at *2 (S.D. Fla. Jan. 29, 2020) (citations omitted).

### 2.   Reliability

For the reliability prong, a court is to consider several factors: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; [and] (4) whether the technique is generally accepted by the scientific community." *Rink*, 400 F.3d at 1292.  Of course, this does "*not* constitute a definitive checklist or test." *Kumho Tire*, 526 U.S. at 150 (emphasis in original).  These factors are "a mere starting point." *Allison*, 184 F.3d at 1312.  The focus should be on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

"The Eleventh Circuit has occasionally hinted that this methodology inquiry may be the most critical of the *Daubert* analysis." *Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *3 (S.D. Fla. May 11, 2020).  "Rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).  The court's gatekeeping role requires more than simply "taking the expert's word for it." *Frazier*, 387 F.3d at 1261.  The "basic foundation for admissibility" is that the expert's opinions be firmly supported "by appropriate validation." *Id*.

### 3.  Assist the Trier of Fact

To be admissible under Rule 702, expert opinions must "assist the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702. "This condition goes primarily to relevance," a court must "ensure the relevancy of expert testimony," meaning that it must determine whether the testimony will assist the trier of fact. *Daubert*, 509 U.S. at 591.  As the Supreme Court has recognized, such opinions must be "relevant to the task at hand." *Daubert*, 509 U.S. at 597.  To be relevant, expert testimony must be sufficiently tied to the facts of the case.  "Rule 702's helpfulness

standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591–92.  In other words, the evidence must have a "valid scientific connection to the disputed facts in the case" and "logically advance[] a material aspect of the proposing party's case." *Allison*, 184 F.3d at 1312 (citing *Daubert*).

## III.   DISCUSSION

### A.  Motion to Strike Expert Witness Disclosure

Fed. R. Civ. P. 26(a)(2) imposes alternative requirements for disclosure of expert testimony. Generally, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Under Fed. R. Civ. P. 26(a)(2)(B), "this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Under Fed. R. Civ. P. 26(a)(2)(C), "if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Stated differently, Rule 26(a)(2)(C) applies if the witness is not one who is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." This interpretation of the rule is consistent with the text's plain meaning, particularly in light of Congress' 2010 amendment to Rule 26(a)(2).

The most thoughtful and well-written analysis this Court has found on this important and relatively common issue happens to be authored by the stentorian and erudite Judge Roy K. Altman, a learned colleague in this District, who aptly explained in

detail:

> [T]he difference between an expert who must provide a full report under Rule 26(a)(2)(B) and an expert who must submit only a summary under Rule 26(a)(2)(C) boils down to whether the expert was "retained ... to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B), (C); *see also Goncharenko v. Royal Caribbean Cruises, Ltd.*, 734 F. App'x 645, 646 n.1 (11th Cir. 2018) ("If the expert is one retained ... to provide expert testimony in the case ... the party must provide a written report from that expert." (cleaned up)). As the advisory committee's notes to Rule 26 make clear, treating physicians generally function as non-retained experts: "The requirement of a written report in paragraph (2)(B) ... applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." FED. R. CIV. P. 26 advisory committee's notes to 1993 amendment.
>
> . . .
>
> [D]espite the plain language of the Federal Rules, courts in this District have repeatedly held that "treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.) (emphasis added); *see also Pringle v. Johnson & Johnson*, 2019 WL 6723822, at *2 (S.D. Fla. Dec. 11, 2019) (Marra, J.) ("[T]reating physicians may be subject to section (2)(B) if they offer opinions that extend beyond their treatment of a patient or if they form opinions upon review of information provided by an attorney or in anticipation of litigation."); *Cajule Cedant v. United States*, 2021 WL 2895714, at *4 (S.D. Fla. July 9, 2021) (Scola, J.) ("[W]hen a treating physician or provider ventures beyond observation, diagnosis, and treatment ..., then he or she must provide a full report[.]" (cleaned up)); *Torres v. First Transit, Inc.*, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (Bloom, J.) ("When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report. By contrast, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." (cleaned up)).

But this artificial division—between opinions the treating physician formed during the course of treatment and opinions he formulated after—has no basis in law. So, for instance, the distinction appears nowhere in the plain text of the Federal Rules. *Cf. Sargeant v. Hall*, 951 F.3d 1280, 1283 (11th Cir. 2020) ("We give the Federal Rules of Civil Procedure their plain meaning." (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991))); A. SCALIA & B. GARNER, READING LAW: THE

INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). To be "retained," after all, means "to [be] ke[pt] in pay or in one's service," Retain, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY; to be "engaged in service" or "employed," Retain, OXFORD ENGLISH DICTIONARY; or to be "hire[d]" or "engage[d] for the provision of services," Retain, BLACK'S LAW DICTIONARY.

Under the text's ordinary meaning, then, we ask only whether the medical professional was "hired," "employed," or "engaged" to provide expert testimony in the case. *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) ("To ascertain ordinary meaning, courts often turn to dictionary definitions for guidance."). Experts who are so employed must supply a full written report; those who aren't can get by with only a summary. And, in the usual slip-and-fall case, the treating physician is involved in the litigation, not because he's been hired to provide testimony, but because he's been treating the plaintiff's injuries. In most cases, treating physicians are not, in other words, the classic "retained" expert—the kind that's hired to testify for (and can be fired by) the plaintiff's legal team.

What's clear from this textual exegesis, in sum, is that the question courts typically ask—did the treating physician form his opinion during or after treatment?—is really irrelevant to the inquiry. That's because whether the physician formed his opinion during or after treatment has no bearing on whether the physician has been "retained." In this respect, of course, the analysis courts typically engage in is both over- and under-inclusive: a treating physician who was hired to provide testimony has been "retained" even if he formed his opinion during treatment; and a treating physician who was not hired to provide testimony isn't "retained" even if he formed his opinion after treatment. And there's nothing about the questions the physician is asked or the answers he gives—about causation or anything else—that suddenly transforms him from a non-retained to a retained expert. The point is this: in distinguishing between those experts who must provide written reports and those who don't, the Federal Rules instruct us to look, not at what the expert examines, but only at what he is (i.e., hired or not hired). And we needn't speculate further about whether this Rule makes sense because, "[i]f Congress had wanted" us to use a different metric, "it would have said so." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008).

. . .

In reaching the opposite result, most courts entertain (improperly, to our mind) a-textual reflections that elevate considerations of policy over the plain meaning of the Rule's text. *Cf. Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (acknowledging that the after-treatment limitation is based on a "purposive reading of Rule 26" (emphasis added)). "[S]everal [c]ourts," in fact, "have pointed to, and struggled with, an absence of

guidance in the law on how to ensure that various opinions offered by treating physicians are sufficiently disclosed prior to expert discovery and trial" and—to promote these "sufficient[ ] disclos[ures]"—have "required expert reports under FRCP 26(a)(2)(B) where the treating physician intends to offer opinions based upon information the opposing side cannot easily glean from medical records." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 2014 WL 5757713, at *5 (S.D.N.Y. Nov. 5, 2014).

Those policy considerations may have been persuasive—compelling even—before Rule 26 was amended in 2010. Before the 2010 amendments, there were vast differences in the disclosure requirements that applied to retained and non-retained experts: whereas retained experts had to disclose full expert reports, non-retained experts didn't have to disclose anything. Because of this disparity, courts understandably felt a strong impulse, whenever the call was close, to classify the expert as retained and to require disclosure. This was necessary, many courts believed, to give the other side adequate notice of the physician's testimony. But, in the 2010 amendments, Congress added Section (C) to Rule 26(a)(2)—which, as we've seen, requires non-retained experts to submit written summaries. *See* FED. R. CIV. P. 26(a)(2)(C) (requiring non-retained experts to supply "a summary of the facts and opinions to which the witness is expected to testify"); FED. R. CIV. P. 26 advisory committee's notes to 2010 amendment (noting that non-retained expert must also provide "the facts supporting [the expert's] opinions"). Under this framework, then, there's little reason to fear that the other side . . . will be surprised by an expert whose testimony it never had the chance to (fully) examine. In this respect, the committee's notes make clear that the "amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." FED. R. CIV. P. 26 advisory committee's notes to 2010 amendment.

And, to the extent any individual judge remains concerned that, in a given case, a Rule 26(a)(2)(C) summary would constitute insufficient notice to the other side, the new rules expressly give district courts the discretion to require more fulsome disclosures—beyond those prescribed in Section (C)—for non-retained experts. *See* FED. R. CIV. P. 26(a)(2)(C) ("Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state ...." (emphasis added)). This discretion, of course, vitiates the need to read any such limitation on a treating physician's testimony into the rules. But here's the rub: whether we agree with the Rule or not—whether we think its policy rationales makes sense or not—we judges "aren't free to rewrite clear statutes under the banner of our own policy concerns." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019); *see also Mamani v. Berzain*, 825 F.3d 1304, 1310 (11th Cir. 2016) ("[U]nless and until the first and third branches of government swap duties and responsibilities, we cannot rewrite statutes.").

*Torres v. Wal-Mart Stores East, L.P.*, 555 F. Supp. 3d 1276, 1289–94 (S.D. Fla. 2021) (Altman, J.). This careful analysis needs no revision and is true to the text as written.

Even if Defendants are correct that Plaintiff's expert disclosure is inadequate under FRCP 26(a)(2)(B), this point is entirely moot. As Plaintiff indicates, Anderson was not "retained or specially employed to provide expert testimony in the case" and is not "one whose duties as the party's employee regularly involve giving expert testimony." Rather, Anderson was hired to perform a peer review assessment of Defendants' design plans, and if necessary, serve as a substitute architect on the Project. Thus, 26(a)(2)(C) controls and Plaintiff need only disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

As discussed in detail *supra* section I, the Court finds Plaintiff easily satisfies these requirements. The disclosure indicates Anderson will testify how the plans prepared by Defendants were incomplete, unbuildable as drawn, improper for their intended use, noncompliant with the Florida Building Code, and ultimately unsalvageable. (DE [100-1]). The disclosure further states that Anderson will testify regarding the standard degree of care and skill ordinarily exercised by architects in south Florida and whether Defendants' work and plans met that standard. *Id.* In the attached affidavit signed by Anderson, Anderson describes specific facts and reasons why Defendants' plans violated the Florida Building Code. *Id.* at 6. The disclosure additionally includes a memorandum prepared by Anderson that further elaborates on Anderson's review and opinions. *Id.* at 10–13. This memorandum provides a detailed summary of the items analyzed during Anderson's initial review of Defendants' plans, including Anderson's factual findings and opinions. *Id.* The Court concludes this disclosure easily satisfies FRCP 26(a)(2)(C) because it

13

identifies the subject matters on which Anderson will present expert testimony and provides a summary of the facts and opinions to which Anderson is expected to testify.

### B. *Daubert*

Hybrid witnesses "may testify regarding their observations based on personal knowledge as well as their lay opinions, consistent with Rule 701, when such opinion testimony is based upon the witness' experience as a professional and is helpful in understanding the witness' decision making process." *Kaplan v. Kaplan*, 2012 WL 1660605, at *2 (M.D. Fla. May 11, 2012) (citing *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011)). However, "[s]uch witnesses may not cross the line and offer expert testimony, which must comply with the requirements of the Federal Rules of Evidence and the strictures of *Daubert*." *Id.* "The distinction between lay and expert testimony is a critical one, requiring that trial courts be vigilant in ensuring that the reliability requirements set forth in Rule 702 not be evaded through the simple expedient of proffering an expert in lay witness clothing." *In re 3M Combat Arms Earplug Products Liability Litigation*, 2021 WL 765019, at *3 (N.D. Fla. Feb. 28, 2021) (citing *Williams*, 644 F.3d at 1317)). "Thus, to the extent that a hybrid witness' testimony goes beyond an account of their own observations and technical experience the trial court must determine whether the testimony meets the evidentiary standards of Rule 702 and Daubert." *Id.*

Plaintiff's disclosure indicates Anderson will testify based on his own observations and technical experience as well as in his capacity as an expert witness. Plaintiff's testimony based on observations and technical experience will include his testimony on how the plans were incomplete, unbuildable as drawn, improper for their intended use, noncompliant with the Florida Building Code, and ultimately unsalvageable. Plaintiff's expert testimony will include his testimony on the standard degree of care and skill

ordinarily exercised by architects in south Florida and whether Defendants' work and plans satisfied that standard. Thus, to provide expert testimony on these latter items Plaintiff must survive the requirements of *Daubert* and FRE 702.

First, the Court finds Anderson is qualified to testify competently regarding the standard degree of care and skill ordinarily exercised by south Florida architects and whether Defendants' work met that standard. Anderson has over four decades of experience as an architect in south Florida. (DE [100-1], at 9). And for the past several decades, Anderson served as the president of his own architecture firm. *Id.* Anderson's specific architecture experience includes the design and project management of hospitality, corporate, industrial, and commercial projects. *Id.* Anderson received a Bachelor of Architecture degree from the University of Miami and is a duly licensed architect in this state. *Id.* Based upon all these facts, the Court finds Anderson possesses specialized knowledge, skill, experience, training, and education in the field of architecture. Anderson's training, skill, and extensive experience in the field of architecture in south Florida qualify him to testify as to the standard degree of care and skill ordinarily exercised by architects in south Florida and whether Defendants' work and plans satisfied that standard. The Court finds Anderson meets the first prong.

Second, the Court finds the methodology by which Anderson will form and render his expert opinions is sufficiently reliable. "Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). Thus, "[f]or nonscientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* (cleaned

up). And "[a] district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience." *Id.* (cleaned up). In *Schoenthal*, the Eleventh Circuit held that a witness' education and substantial experience in a specific field qualified him to testify as an expert about industry standards in that field. 555 F.3d at 1338–39. Here, as discussed in the preceding paragraph, Anderson has over four decades of experience as an architect, received a degree in architecture, and is licensed in Florida. Anderson will offer testimony about the architecture industry's standard of care in south Florida and whether Defendants' work and plans met that standard based upon his peer review of Defendants' work product. The Court finds the second prong is satisfied.

Third, the Court finds that Anderson's expert testimony will assist the trier of fact in understanding the south Florida architecture industry standard of care and whether Defendants' work and plans met that standard. The standard of care in the field of architecture is one that falls outside the knowledge of laypersons and thus requires expert testimony. This question is one of the key issues in this case, and is thus not only relevant, but also critical for Plaintiff to meet its burden of proof. Accordingly, the Court finds the third prong is satisfied.

Defendants attack Anderson's credibility as an expert in several ways. First, Defendants contend Anderson's methodology is deficient. However, as discussed above, Anderson is able to proffer expert opinion on the architecture industry's standard of care because he has substantial training and experience in that industry. And Anderson can properly apply this standard of care to the facts of the case and determine whether Defendants met that standard because he has conducted an in-depth peer review of Defendants' work. Second, Defendants assert any opinion held by Anderson was only

16

held at a snapshot in time. Defendants cite no authority for the proposition that holding an expert opinion at a specific point in time undermines its validity and the Court is aware of none. Third, Defendants argue Anderson did not know what phase the design/Marriott review process was at when he conducted his peer review. Plaintiff responds that this multi-phase design process is specific to Marriott and thus has no bearing on Anderson's viability as an expert. The Court agrees. Defendants' arguments go to the weight rather than admissibility of the testimony. Defendants remain free to inquire into this and other lines of questioning at trial to attack Anderson's credibility as an expert witness. But at this stage, it is insufficient to invalidate Anderson's reliability under *Daubert* because he only need be minimally qualified to render expert opinion. *See Fitzgibbon*, 2020 WL 1172495, at *2. Thus, any "objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Id.* Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion (DE [100]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 10th day of August 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF